IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RONALD F. ROMERO,

      Petitioner,

vs.                                                                                        Cause No. 1:09-cv-232 RB/DJS

DONNA K. GOODRICH, Warden, Gallup
McKinley Adult Detention Center, and
PUEBLO OF NAMBÉ,

      Respondents.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Pueblo of Nambé's *Motion to Reconsider and Vacate the Magistrate Judge's Proposed Findings and Recommended Disposition* ("Motion to Reconsider") [Doc. 30], filed March 11, 2010.[1] For the reasons stated below, the Motion to Reconsider is **granted in part**. The *Magistrate Judge's Proposed Findings and Recommended Disposition* ("PFRD") [Doc. 28] is hereby **withdrawn**.[2] Furthermore, the Court requests the parties submit supplemental briefs addressing whether this case is moot.

**I.     BACKGROUND**

Petitioner Ronald Romero, who is represented by counsel, filed a *Petition for Writ of Habeas Corpus Pursuant to 25 U.S.C. § 1303 for Relief from Indian Tribal Court Conviction and Order of*

---

[1]By Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, and Immigration Habeas Corpus Proceedings [Doc. 5], filed March 13, 2009, this case was referred to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case.

[2]Nothing contained in this Order constitutes a ruling on any claim, or a recommendation to the District Judge. The Court's analysis here serves merely to advise the parties of the Court's reasons for withdrawing its earlier recommendation and to elaborate the basis for additional briefing. The parties may therefore reserve any objections occasioned by the Court's analysis and assert them to any subsequent recommendation the Court issues under 28 U.S.C. § 636(b)(1), without waiving such objections.

1

*Detention* ("Petition") on March 10, 2009. [Doc. 1.] At the time the Petition was filed, Romero was serving an eight-year sentence imposed by a Tribal Court Judge of the Pueblo of Nambé ("Pueblo") and he sought immediate release from custody, or alternatively, an evidentiary hearing to inquire into the legality of the detention. [Doc. 1 at 12–13.] The Petition alleged multiple claims attacking various aspects of the Tribal Court pretrial and trial proceedings as well as the sentence that ultimately was imposed.

On March 9, 2010, the undersigned issued his *Magistrate Judge's Proposed Findings and Recommended Disposition* ("PFRD"). [Doc. 28.] The Court concluded that the eight-year sentence imposed was in excess of the Tribal Court's authority under the Indian Civil Rights Act ("ICRA"), and accordingly recommended that the writ be granted. Because the sentencing issue was dispositive and appeared to entitle Romero to habeas relief, the Court did not reach the merits of Romero's other claims.

The PFRD directed the parties to advise the Court of Romero's status so it could be determined whether immediate release was in order. [Doc. 28 at 18.] Counsel for Romero responded by advising the Court that he had been removed from the Gallup McKinley Adult Detention Center, where he was being held pursuant to a contract with the Pueblo, and transferred to the Douglas County Jail where he was subject to a "federal hold." [Doc. 32 at 2.]

In the meantime, the Pueblo filed its Motion to Reconsider alleging that the reason for the federal hold was that Romero had been indicted in Colorado on charges of assaulting a federal officer while incarcerated. The Pueblo's motion further advised the Court that in light of the potential 20-year sentence carried by the federal offense, the Pueblo had commuted Romero's Tribal Court sentences, including fines and probation, to time served as of March 1, 2010, and issued a Release Order thereby relinquishing authority over him. [Doc. 30 at 9.]

## II.    DISCUSSION

### A.    The Parties' Arguments

The Pueblo moves the Court to reconsider its recommendation that the writ be granted.  The Pueblo's position is that Romero has obtained all the relief he requested, and essentially, that the Petition is moot.  The Pueblo's argument is that having commuted his sentence and issued a Release Order it no longer has control over Romero.  It points out that the Court's jurisdiction was premised on the existence of an underlying detention order, and now that there is no detention order, there is no longer a reason or a need to grant the petition for habeas corpus.  The Pueblo asks the Court to: (1) vacate the PFRD and (2) deny the Petition.

Romero asserts several arguments in opposition to reconsideration.  First, he argues that the Pueblo's Motion to Reconsider improperly circumvents the procedures for habeas review and is simply an attempt to avoid the Court's recommendation that the writ be granted.  In a related argument, he contends the Pueblo's motion should be denied because it is not in the form of objections to the PFRD, and further, that by failing to file timely objections, the Pueblo has waived review.

Regarding the substance of the Pueblo's motion, Romero denies that the attack on his sentence is moot.  His argument appears to be that the Pueblo's actions in cutting short his sentence and "releasing" him do not alter the fact that he has already suffered a constitutional violation by serving a sentence that was longer than ICRA permits.  He claims that the commutation constitutes an attempted resentencing and is itself illegal because it imposes a sentence greater than the maximum permitted by ICRA.  He also asserts that an exception to the mootness doctrine applies - that this situation is capable of repetition, yet evades review.

Finally, he argues that even if the collateral attack on his sentence has been rendered moot,

he has five other constitutional claims whose merits were not addressed in the PFRD. Moreover, he claims that he continues to suffer "direct and collateral consequences of the Tribal sentence." [Doc. 33 at 5.] These alleged collateral consequences include his current federal charges and related incarceration.

### B. Analysis

#### 1. A Motion to Reconsider is proper

The Court first addresses Romero's waiver argument. It is true that a party that fails to file timely objections to a magistrate judge's recommendation waives review. *Vega v. Suthers*, 195 F.3d 573, 579 (10th Cir. 1999) (noting that Tenth Circuit has adopted the "firm waiver" rule). However, the Pueblo's Motion to Reconsider raises questions regarding the Court's jurisdiction and authority to act. These are matters that cannot be waived. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511–12 (10th Cir. 1994) (citing *Sosna v. Iowa*, 519 U.S. 393, 398 (1975)). A motion to reconsider that requests the Court revisit its earlier recommendation is not an improper vehicle to raise these issues.

#### 2. Reconsideration is warranted based on changed circumstances

The Court is persuaded that its recommendation to grant the writ should be withdrawn and reconsidered. The recommendation was based upon the circumstances as they existed at the time the recommendation was issued, and those circumstances have now changed. It was premised on the fact that Romero was then serving a sentence the Court concluded was in excess of the maximum permitted by ICRA. He reportedly is no longer serving that sentence. Thus, the premise on which the Court's recommendation was based has been removed.

Furthermore, it would appear that Romero's habeas attack on the sentence is now moot. *Lane v. Williams*, 455 U.S. 624, 631–32 (1982). Once a sentence has been completed and the

petitioner is no longer "in custody," an allegedly illegal sentence cannot stand on its own as the basis for habeas relief. *See Brown v. Warden, Springfield Med. Ctr.*, 315 F.3d 1268, 1269–70 (10th Cir. 2003). Accordingly, the claim that the Court viewed as dispositive at the time it issued its PFRD appears to have been rendered moot and cannot support a recommendation to grant the writ.

Romero's attempt to invoke the "capable of repetition yet evading review" exception to mootness does not convince the Court that its earlier recommendation is still viable. The capable-of-repetition doctrine applies only in exceptional situations where the following two circumstances are simultaneously present: (1) the challenged action is too short in duration to be litigated prior to cessation; and (2) there is a reasonable possibility that the complaining party will be subject to the same action again. *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (citations omitted). Romero's case satisfies neither of these conditions. He has not shown, nor has he attempted to show, that the time between the imposition of a sentence and expiration of the sentence is always so short as to evade review. Nor has he demonstrated a reasonable likelihood that he will once again be subject to an arguably unlawful Tribal Court sentence.

In opposing reconsideration, Romero also argues that the Tribal Court orders commuting his sentence and releasing him from Tribal custody do not remedy the "illegal sentence." [Doc. 33 at 3.] However, the function of the writ of habeas corpus is to secure release from illegal custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To the extent the Tribal Court sentence was illegal, the relief Romero sought has been obtained. Even if the Court were to accept Romero's characterization that the Tribal Court orders constitute a "resentencing," which the Court does not, it is not clear what remedy he would have the Court grant other than release from Tribal custody. If it is merely a declaration that the sentence was illegal, that remedy is not available. The Court cannot issue advisory opinions or pronounce upon questions that are moot. *Ferry v. Gonzalez*, 457

F.3d 1117, 1132 (10th Cir. 2006). Accordingly, the Court's earlier recommendation must be withdrawn.

### 3. Mootness is a threshold issue

The question now remaining is whether Romero's other claims also have been rendered moot by the commutation of his Tribal Court sentence and his release from Tribal custody. These other claims include violation of the right to counsel, violation of the right to a jury trial, and several due process violations that allegedly occurred pretrial and at trial. The papers before the Court do not adequately address this question, and the issue must be resolved before the Court may proceed to the merits.

Article III's "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). To sustain jurisdiction, it is not enough that a dispute existed when suit was filed; the "parties must continue to have a personal stake in the outcome." *Id.* at 478 (citations and quotation marks omitted). This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* at 477. "If, during the pendency of the case circumstances change such that [a party's] legally cognizable interest in a case is extinguished, the case is moot, and dismissal may be required." *Green v. Haskell County Bd. of Comm'rs*, 568 F.3d 784, 794 (10th Cir. 2009) (quotations omitted). The Court does not have "the power to decide questions that cannot affect the rights of litigants in the case before them." *Lewis*, 494 U.S. at 477 (citation and quotation marks omitted).

An incarcerated petitioner's challenge to the validity of his conviction always satisfies the case-or-controversy requirement. *Spencer*, 523 U.S. at 7. Once the petitioner's sentence has expired, however, he must demonstrate some concrete and continuing injury—some "collateral

consequence" other than the now-ended incarceration. *Id.*

In recent decades, courts have developed the practice of presuming collateral consequences when a petitioner challenges a criminal conviction. *Spencer*, 523 U.S. at 11–12. The presumption arises from the "obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences." *Id.* at 12 (quoting *Sibron v. New York*, 392 U.S. 40, 55 (1968)). In cases where the presumption does not apply, the petitioner bears the burden of proving collateral consequences adequate to meet Article III's injury-in-fact requirement. *Id.* at 14.

Romero appears to recognize that collateral consequences must exist if he is to maintain this habeas action. He recites the general proposition that the habeas petitioner who has served a full sentence may still encounter collateral consequences, including a laundry list of civil disabilities. [Doc. 33 at 5.] The proposition is no doubt applicable in the context of a state or federal felony conviction, but Romero does not indicate which, if any civil disabilities attend his Tribal Court conviction and sentence.

He claims his current incarceration on federal charges is a collateral consequence of the Tribal Court sentence. The Court disagrees. Romero's current incarceration is not collateral to the Tribal Court conviction or the sentence; it is a direct consequence of his own conduct or other intervening circumstances.

Romero also claims that he may be denied the opportunity to have the arguably excess two years he spent incarcerated under the Tribal detention order credited to any future sentence. He does not elaborate on this claim, however, and it is not clear to the Court how the denial of his habeas petition would affect any future sentencing. Furthermore, Tenth Circuit caselaw appears to belie Romero's contention that the potential effect on a future sentence calculation qualifies as a collateral consequence sufficient to support jurisdiction. *See Brown*, 315 F.3d at 1270 ("A prisoner who has

completely served his state sentence is not entitled to habeas relief under § 2254 even if the state sentence affected the calculation of his federal sentence.").

Aside from these two dubious consequences, Romero states "the conviction and illegal sentence will continue to affect Petitioner Romero in the future." [Doc. 33 at 5.] This is insufficiently concrete or specific to allow the Court to find jurisdiction.

Absent a pardon, the civil disabilities that attend a criminal conviction typically are presumed to remain after the expiration of the petitioner's sentence. *Evitts v. Lucey*, 469 U.S. 387, 391 n.4 (1985). However, the collateral consequences Romero identifies are vague or otherwise insufficient and cause the Court to wonder whether the presumption applies to this case. Because this issue bears on jurisdiction, the Court is unwilling to assume collateral consequences exist in connection with a Tribal Court conviction and sentence, now commuted, without the benefit of briefing from the parties. Furthermore, given the unusual nature and evolving circumstances of this case, Romero should be given an opportunity to elaborate on the collateral consequences he has named, and to identify any others that are associated with his Tribal Court conviction and sentence.

The Court therefore requests the parties to submit supplemental briefs on the issue of collateral consequences or any other matters bearing on whether this case is moot. Romero shall file his brief no later than October 8, 2010; the Pueblo shall file a response brief within 14 days of service of Romero's brief. Romero may file a reply brief within 14 days of service of the response. The opening and response briefs shall not exceed 12 pages in length; the reply, if filed, shall not exceed six pages.

**IT IS SO ORDERED.**

_____
**DON J. SVET**
**United States Magistrate Judge**