IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RONALD F. ROMERO,

    Petitioner,

vs.                                                    Cause No. 1:09-cv-232 RB/DJS

DONNA K. GOODRICH, Warden, Gallup
McKinley Adult Detention Center, and
PUEBLO OF NAMBÉ,

    Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

By Order of Reference [Doc. 5], filed March 17, 2009, this matter was referred to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the case. The Court recommends that the *Petition for Writ of Habeas Corpus Pursuant to 25 U.S.C. § 1303 for Relief from Indian Tribal Court Conviction and Order of Detention* [Doc. 1] be **dismissed as moot.**

### I.  BACKGROUND

This case has an unusual factual and procedural history. The Court initially concluded that Petitioner had a meritorious claim for habeas relief and accordingly recommended that the writ be granted. However, subsequent events—namely, Petitioner's release from tribal custody and the commutation of his tribal court sentence—caused the Court to withdraw its recommendation and to request briefing on the issue of mootness. After considering the arguments of counsel in the

---

[1] Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

supplemental briefs,[2] the Court concludes that the case has become moot and should be dismissed.

### A. Factual Background

The following facts appear from the pleadings and record before the Court.

Petitioner Ronald Romero ("Romero") is an enrolled member of the Pueblo of Nambé ("Pueblo"). [Doc. 1, ¶ 1.] On Thursday, February 22, 2007, an officer of the Santa Fe County Sheriff's Department was dispatched to a residence within the boundaries of the Pueblo where Romero reportedly was causing a violent domestic disturbance. [Doc. 11-7 (Statement of Probable Cause) at 1.] Upon arrival, the officer made contact with three females—two juvenile relatives of Romero, and one elderly woman identified as Romero's mother, Mrs. Romero. [Id.] They reported that they were watching television when Romero entered the home, apparently intoxicated, and began demanding money. [Id.] He yelled profanities, and when one of the younger females asked him to leave the residence and to demonstrate respect for his mother, Romero spit in the juvenile's face. [Id.] He then threatened to kill everyone in the house. [Id.] He continued yelling at Mrs. Romero who was standing behind a recliner chair. [Id.] He then shoved the recliner into her, causing her to fall backward; one of the girls caught Mrs. Romero. [Id.] Romero then swung a punch at his mother, missed her, and almost hit the girl in the face. [Id.]

Romero went on a rampage throughout the house, knocking things over and punching holes in the walls. [Doc. 11-7 (Statement of Probable Cause) at 2.] One of the girls ran for the telephone to call for help, but Romero grabbed the telephone and threw it across the room, disabling it. [Id.] He threatened to burn the house down. [Id.] He did not let the victims leave the house, keeping

---

[2]The briefs before the Court are: (1) Petitioner Romero's Supplemental Brief on the Issues of Mootness and Collateral Consequences [Doc. 38], filed October 8, 2010; (2) Respondent Nambé's Response Brief to Issues of Mootness and Collateral Consequences [Doc. 39], filed October 22, 2010; and (3) Petitioner Romero's Reply Brief on the Issues of Mootness and Collateral Consequences [Doc. 40], filed November 5, 2010.

them confined in the living room and pinning one girl against the refrigerator. [Id.] They eventually were able to escape from the house and call for help on a cell phone. [Id.] When the officer arrived, they reported to him they were in fear for their lives because Romero was out of control and they thought he would hurt or kill them. [Id.]

The officer took Romero into custody and placed him in handcuffs in the back of the police vehicle. [Doc. 11-7 (Statement of Probable Cause) at 2.] En route to the police department, Romero verbally threatened the officer by stating he would kill the officer and the officer's family once he was released. [Id.]

These incidents gave rise to numerous charges. Romero pled not guilty, and on May 30, 2007, was convicted in Nambé Tribal Court after a bench trial before a tribal court judge. The Judgment and Sentence [Doc. 1-2 at 2] reflects that he was convicted and sentenced as follows:

  Count 1:  Battery against a household member..............365 days

  Count 2:  Assault against a household member..............365 days

  Count 3:  Assault............................................................365 days

  Count 4:  Assault............................................................365 days

  Count 5:  Battery...........................................................365 days

  Count 6:  Assault on a Peace Officer..............................365 days

  Count 7:  Criminal Damage to Property..........................365 days

  Count 8:  Interference with communications...................365 days

  Count 9:  Criminal Trespass............................................365 days

  Count 10:  False Imprisonment..........................................365 days

  Count 11:  False Imprisonment..........................................365 days

  Count 12:  False Imprisonment..........................................365 days

Counts 7, 9, 11, and 12 ran concurrently with sentences for other counts, but otherwise the sentences were consecutive, resulting in a total term of imprisonment of eight years. [Doc. 1-2 at 2.] The Tribal Court also imposed $7,050 in fines and fees. [Id.]

Romero was held in custody for the entire time between his arrest in February 2007 and his conviction in May 2007. [Doc. 1 at 5.] During that time, he appeared for an arraignment and a pretrial conference. At no time during the criminal proceedings was Romero represented by legal counsel.

On June 15, 1007, Romero appealed the Tribal Court's decision. [Doc. 10-1.] On June 23, 2007, he addressed a letter to the Tribal Counsel and the Pueblo of Nambé Governor requesting a retrial. [Doc. 10-3.] In the letter, he complained among other things that he had not been read his *Miranda* rights, that he had no legal representation, and that the judge was not impartial. [Id.] The Pueblo characterized the letter as an appeal and submitted it to the Southwest Intertribal Court of Appeals ("SWITCA").[3] The SWITCA upheld Romero's conviction and sentence in a written opinion dated November 7, 2007. [Doc. 10-4.] The opinion addressed Romero's right to counsel and *Miranda* claims, and concluded that neither provided grounds for reversing the conviction. [Id.]

Romero, who was at that time incarcerated in Colorado, filed a *pro se* Petition for Writ of Habeas Corpus in the District of Colorado on November 21, 2008.[4] The district court entered an order directing Romero to cure deficiencies by either paying the filing fee or filing a motion and affidavit for leave to proceed *in forma pauperis*. The district court also directed Romero to file an Application for a Writ of Habeas Corpus on the proper form. [Doc. 1-3.] The docket sheet reflects

---

[3]Pursuant to a Tribal Council resolution, the SWITCA acts as an independent court of appeals for the Pueblo of Nambé. [Doc. 10-5.]

[4]The case was assigned cause No. 1:08-cv-2539-ZLW.

4

that the District of Colorado received a money order and a Motion and Affidavit for Leave to Proceed under 28 U.S.C. § 1915 from Romero on December 22, 2008. [Id.]

On December 23, 2008, Romero was granted an additional 30 days to comply with the previous Order to Cure Deficiencies. [Doc. 1-3.] However, in December 2008, Romero was relocated from Colorado to a facility in Gallup, New Mexico. [Doc. 1 at 3.] Consequently, the District of Colorado's order granting an extension was returned as undeliverable, and on February 2, 2009, the Colorado habeas petition was dismissed without prejudice. [Id.]

B.     **Procedural Background**

Romero, who is represented by counsel in this habeas proceeding, filed his *Petition for Writ of Habeas Corpus Pursuant to 25 U.S.C. § 1303 for Relief from Indian Tribal Court Conviction and Order of Detention* [Doc. 1] in this court on March 10, 2009. Respondents are Donna K. Goodrich, the warden of the Gallup McKinley Adult Detention Center where Romero was incarcerated when the petition was filed, and the Pueblo. The Petition lists seven grounds for habeas relief.[5]

On March 9, 2010, the Court issued its *Magistrate Judge's Proposed Findings and Recommended Disposition* ("PFRD") recommending that the Petition be granted. [Doc. 28.] The Court found the sentencing issue to be dispositive and so did not address the other six grounds. The Court directed the parties to report on the current status and circumstances of Romero's detention so it could be determined if release was appropriate. [Id. at 18.]

---

[5]The seven grounds are: (1) the Pueblo violated his Sixth Amendment right to counsel when it tried, convicted, and sentenced him to eight years without benefit of counsel; (2) the Pueblo violated his Fifth Amendment right to due process by appointing the arresting officer to serve as his lay counsel during pretrial plea negotiations; (3) the Pueblo violated his due process rights when it allowed the tribal court judge who presided over his trial and sentencing to participate in plea negotiations; (4) the Pueblo violated his Fifth and Sixth Amendment rights by failing to timely inform him of the nature of the accusations against him and by failing to provide compulsory process for obtaining witnesses in his favor; (5) the Pueblo violated his due process rights by applying conflicting state and tribal codes; (6) the sentence imposed is in excess of the statutory maximum of one year; and (7) the Pueblo deprived him of his Sixth Amendment right to a jury trial.

Shortly after the Court issued the PFRD, the Pueblo advised the Court that a Colorado grand jury had indicted Romero for assaulting a federal officer in Colorado, and that the United States District Court for the District of Colorado had issued a Writ of Habeas Corpus ad Prosequendum ordering that he be returned to Colorado where he would remain in federal custody pending prosecution for that crime. [Doc. 30.] In light of the lengthy sentence Romero potentially faced for the federal crime, the Nambé Tribal Court commuted Romero's tribal sentences, including fines and probation, to time served as of March 1, 2010, and issued a Final Release Order directing that he "be immediately released on all charges from the Nambe Pueblo Tribal Court." [Doc. 30, ¶ 9; Doc. 30-2.] The Pueblo argued that the premise for the Court's jurisdiction had been removed and that because Romero has been released from tribal detention, there was no longer a reason or need to grant the petition. [Doc. 30, ¶ 14.]

Upon being advised of these developments, the Court concluded that Romero's release from tribal custody may have rendered the Petition moot and deprived the Court of authority to act. The Court therefore granted the Pueblo's motion to reconsider the recommendation that the writ be granted. The Court withdrew its recommendation and requested the parties provide supplemental briefs "on the issue of collateral consequences or any other matter bearing on whether this case is moot." [Doc. 36 at 8.]

## II.   DISCUSSION

### A.   Legal Standards

Romero claims his conviction and subsequent detention by the Tribal Court violate the Indian Civil Rights Act of 1968 ("ICRA"). ICRA provides that: "The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian Tribe." 25 U.S.C. § 1303.

Romero's release from tribal detention raises the question whether his petition has now become moot. Article III's "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990). To sustain jurisdiction, it is not enough that a dispute existed when suit was filed; the "parties must continue to have a personal stake in the outcome." Lewis, 494 U.S. at 478 (citations and quotation marks omitted). This means that throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Lewis, 494 U.S. at 477. "If, during the pendency of the case circumstances change such that [a party's] legally cognizable interest in a case is extinguished, the case is moot, and dismissal may be required." Green v. Haskell County Bd. of Comm'rs, 568 F.3d 784, 794 (10th Cir. 2009) (citation and quotation marks omitted).

An incarcerated petitioner's challenge to the validity of his conviction always satisfies the case-or-controversy requirement. Spencer v. Kemna, 523 U.S. 1, 7 (1998). Once the petitioner's sentence has expired, however, he must demonstrate some concrete and continuing injury—some "collateral consequence" other than the now-ended incarceration. Spencer, 523 U.S. at 7. In recent decades, courts have developed the practice of presuming collateral consequences when a petitioner challenges a criminal conviction. Spencer, 523 U.S. at 11–12. The presumption arises from the "obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences." Spencer, 523 U.S. at 12 (quoting Sibron v. New York, 392 U.S. 40, 55 (1968)). In cases where the presumption does not apply, the petitioner bears the burden of proving collateral consequences adequate to meet Article III's injury-in-fact requirement. Spencer, 523 U.S. at 14.

**B.     The Parties' Arguments**

Romero argues his Petition is not moot because: (1) he met the "in custody" requirement

when he filed the Petition; (2) the Pueblo's order releasing him from custody did not have the power to render the Petition moot; and (3) he continues to suffer direct and collateral consequences of the allegedly wrongful conviction. The Pueblo responds that Romero's Petition is moot because: (1) the only relief he requested was release from tribal custody, and that relief has been obtained; (2) even if he had attacked his conviction, not just his sentence, any civil liberties he may lose were previously forfeited due to prior convictions; and (3) once the Petitioner has been released, ICRA should not be construed to afford any additional relief beyond release from detention.

**C.   Analysis**

    **1.   Nature of the relief Romero requested**

The Court addresses first the issue of the nature of the relief Romero requested. If his purpose in filing the Petition was to seek release from illegal detention, he has obtained that relief and the Petition is moot. However, if he sought relief from the conviction, the Court must proceed to consider the issue of collateral consequences to determine whether the Petition is moot.

The Pueblo's argument that the Petition is moot because Romero only sought release from custody is persuasive. Although the Petition advanced several reasons why Romero believed the conviction was wrongful, the remedy he requested was release from custody or a new trial. [Doc. 1 at 12.] As an alternative, he requested "an evidentiary hearing to inquire as to the legality of the detention." [Id. at 13.]

A remedy as extraordinary as vacating a conviction imposed by a sovereign entity should be expressly requested. In his Petition, however, Romero did not request that the conviction be vacated.[6] Because he is represented by counsel, his Petition does not necessarily receive the

---

[6]Romero's general prayer for "any other further relief that this Court deems just and proper" is not equivalent to a specific request to set aside the conviction. Lane v. Williams, 455 U.S. 624, 631 n.11 (1982).

courtesy of a liberal construction that the Court affords pleadings drafted by pro se litigants. When the petition states only that the petitioner seeks immediate release, the Court and respondents should not have to read between the lines or infer that he also seeks to have the conviction vacated. Yet, it was not until the last pages of Romero's supplemental brief on the issue of mootness that he suggests he is seeking relief in the form of vacating the conviction. [Doc. 38 at 8.]

Nevertheless, because Romero has now made clear in his reply brief that he seeks to have his conviction "overturned," the Court will proceed to evaluate whether he continues to suffer collateral consequences sufficient to present an Article III case or controversy, or whether his release from tribal custody has rendered the case moot.

### 2.     Romero's preliminary jurisdictional arguments are without merit

Before proceeding to the question of mootness, the Court addresses several erroneous premises advanced by Romero. First, Romero argues that the proper inquiry is whether he was "in custody" when he filed the Petition. [Doc. 38 at 5.] The Court rejects this argument.

Romero erroneously conflates the "in custody" requirement with the requirement that the case present a live controversy throughout all stages of the proceedings. For the Court to exercise jurisdiction over his habeas petition, Romero must have been "in custody" when he filed it, and the Court also must be able to grant relief. See Iron Arrow Honor Soc. v. Heckler, 464 U.S. 67, 70 (1983) (holding that federal courts lack jurisdiction to decide moot cases). Thus, merely because Romero was in custody when he filed the Petition does not mean the Court has power to grant relief after he is released from custody. Circumstances have changed and the relevant inquiry now is whether he continues to suffer collateral consequences adequate to satisfy Article III's case-or-controversy requirement.

Second, the Court also rejects Romero's argument that the case cannot be made moot by the

9

Pueblo's conduct in commuting his sentence "after the fact," or as Romero characterizes it, "simply because the Tribe wanted to circumvent pending federal review." [Doc. 38 at 6.] The Pueblo's motivations are irrelevant if its actions prevent the Court from granting effective relief. See In re Campbell, 36 F.App'x 388, 390 (10th Cir. 2002) (unpublished) (citing In re Nat'l Media Telecomm. Sys., Inc., 152 F.3d 1178, 1180 (9th Cir. 1998)). The same is true for mootness that results from delay in the district court. "[M]ootness, however it may have come about, simply deprives [the Court] of the ability to act." Spencer, 523 U.S. at 18.

Third, the Court cannot grant relief, as Romero seems to argue, merely because one or more of his claims may have merit. He argues that the Pueblo's release order does not remedy the fact that he arguably served a sentence that was longer than ICRA permits and that the Court has not addressed several of his grounds for habeas relief. If the case is moot, however, the Court is without authority to act. "We are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." Spencer, 523 U.S. at 18; see also S. Utah Wilderness Alliance v. Smith, 110 F.3d 724, 727 (10th Cir. 1997) ("A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it."(citation omitted)).

Finally, Romero's assertion that if "the Court finds that the issue is moot, then it looks to the existence of collateral consequences" [Doc. 40 at 5] is simply erroneous. The Court examines collateral consequences for the very purpose of determining whether the case is moot.[7]

---

[7]Romero's reliance on North Carolina v. Rice in connection with these arguments is puzzling. [Doc. 40 at 3.] Rice holds that mootness is a "threshold issue" and a "jurisdictional question." North Carolina v. Rice, 404 U.S. 244, 245–46 (1971). Furthermore, the Supreme Court did not hold that the habeas petitioner in Rice was entitled to have the record of his conviction overturned and his record expunged as Romero claims. To the contrary, the Supreme Court held the Court of Appeals had improperly disposed of the mootness issue and remanded it for reconsideration. Rice, 404 U.S. 246, 248.

### 3. The Court will not presume collateral consequences

Romero states, without elaboration, that the Supreme Court "has departed from all inquiry into the actual existence of specific collateral consequences." [Doc. 38 at 9.] He is only partially correct. The presumption does not apply in every case. See, e.g., Spencer, 523 U.S. at 12 (declining to extend presumption to challenges of parole termination). Where the justification for the presumption is absent, it is appropriate to inquire into the collateral consequences alleged to determine whether they are sufficient to satisfy Article III. Spencer, 523 U.S. at 14 ("The question remains, then, whether petitioner has demonstrated such [collateral] consequences [to meet Article III's injury-in-fact requirement].")

In requesting additional briefing, the Court advised the parties that application of the presumption was in doubt in this case. [Doc. 36 at 8.] The Supreme Court has stated that the presumption "sits uncomfortably" beside long-settled principles regarding jurisdiction. Spencer, 523 U.S. at 10–11. These long-settled principles are first, that standing cannot be inferred but must affirmatively appear in the record, and second, that the party who seeks the exercise of jurisdiction in his favor bears the burden of demonstrating jurisdiction. Spencer, 523 U.S. at 10–11 (quotation marks and citation omitted).

Because it was not obvious to the Court that a tribal court conviction entails the same civil disabilities that attach to convictions in state or federal court, the Court requested the benefit of further briefing. [Doc. 36 at 7–8.] In his supplemental briefing, Romero makes passing mention of the presumption, but makes no argument that it applies here. [Doc. 38 at 9.] Furthermore, the collateral consequences Romero lists fail to persuade the Court that the presumption of significant collateral consequences "comports with reality." Given that Romero has not argued for the presumption and the justification for the presumption appears absent, the Court declines to apply

it here. The question thus becomes whether Romero has demonstrated collateral consequences.

### 4. Romero's alleged collateral consequences are not sufficient to establish jurisdiction

Romero alleges three consequences he claims are collateral to the conviction and prevent this case from being moot.[8] The first is his "continued loss of liberty." [Doc. 38 at 9.] The second is "the possibility that any subsequent conviction may be used to impeach testimony that Mr. Romero might give in a future proceeding." [Id.] The third alleged consequence is "the possibility that [the conviction] may be used to enhance a future sentence." [Id.]

#### a. Continued loss of liberty

By "continued loss of liberty," Romero means the sentence he is currently serving for an unrelated federal offense he committed while he was incarcerated for the tribal conviction at issue in this habeas proceeding. According to Romero, the "incident leading to a second conviction could never have occurred had Mr. Romero not been in illegal custody." [Doc. 38 at 8.]

Romero's current incarceration is not a "collateral consequence" of his tribal conviction. "Collateral consequences" for Article III purposes are legal disabilities that are "imposed on the basis of the challenged conviction." Sibron, 392 U.S. at 57. Romero's current incarceration was not imposed "on the basis" of his tribal conviction. Though it is the result of a crime he committed while serving a sentence that perhaps was in violation of ICRA, it is a separate legal consequence, independent of the tribal conviction and sentence.

Furthermore, to satisfy Article III's case or controversy requirement, the alleged collateral

---

[8]In his reply brief, Romero alleges the additional collateral consequence that his "employment possibilities" may be curtailed because of the conviction. [Doc. 40 at 5.] The Court does not consider arguments that are raised for the first time in a reply. See United States v. Murray, 82 F.3d 361, 363 n.3 (10th Cir. 1996). Even if the Court were to consider this alleged collateral consequence, it would find the loss of employment prospects insufficient to establish a case-or-controversy. Lane v. Williams, 455 U.S. 625, 632–33 (1982).

12

consequence must be one that the court can remedy by ruling in the petitioner's favor. See Kennecott Utah Copper Corp. v. Becker, 186 F.3d 1261, 1266 (10th Cir. 1999) (stating that core question in mootness inquiry is whether granting present determination of the issues will have some effect in the real world). If the Court cannot grant effective relief, the case is moot. Buchanan v. Snedeker, 588 F.3d 1281, 1282–83 (10th Cir. 2009). Romero does not claim the Court can relieve him of his current incarceration by granting his Petition. Indeed, it is difficult to see how the Court could release Romero from an incarceration which results from a separate conviction that is not under attack in this proceeding. The Court therefore rejects Romero's contention that his current incarceration is a collateral consequence of the tribal court conviction.

### b.   Future impeachment or sentence enhancements

Romero asserts that "[a]nother collateral consequence is the possibility that any subsequent conviction may be used to impeach testimony that Mr. Romero might give in a future proceeding, or the possibility that it may be used to enhance a future sentence." [Doc. 38 at 9.] The Court finds his assertions too speculative and general to satisfy his burden. He has not explained the legal basis supporting his claim that a tribal court conviction can be used to impeach him or to enhance a future sentence.

In listing these two alleged collateral consequences, Romero has done nothing more than cite to Spencer v. Kemna. [Doc. 38 at 9.] In Spencer, however, these same alleged collateral consequences were rejected as too contingent to satisfy the case-or-controversy requirement. The Supreme Court rejected future impeachment as a collateral consequence because it was "purely a matter of speculation whether such an appearance [as a defendant in a criminal proceeding] will ever occur." Spencer, 523 U.S. at 16. The Supreme Court rejected future sentence enhancement as a collateral consequence "because it was contingent upon respondents' violating the law getting

13

caught, and being convicted." Spencer, 523 U.S. at 15. The Court likewise rejects these alleged collateral consequences as speculative and contingent.

Carafas v. LaVallee, upon which Romero relies heavily, serves to demonstrate the shortcomings in his argument. In Carafas, the Petitioner's habeas petition was not rendered moot by the expiration of his sentence because "disabilities or burdens" were imposed "[i]n consequence of his conviction." Carafas v. LaVallee, 391 U.S. 234, 237 (1968). The burdens that kept the case from becoming moot were specific and concrete and identified with reference to state law. Carafas, 391 U.S. at 237 & n. 4–8 (citing statutes that precluded petitioner, because of his conviction, from engaging in certain business, serving as an official of a labor union, voting in certain elections, or serving as a juror). Romero, by contrast, does not explain the legal basis for his assertions.

It is incumbent upon Romero to explain the specific collateral consequences and show how they apply to him. He cannot meet his burden by arguing generalities, especially when the Court has indicated that the general proposition may not be sufficient in this case and directed him to state "which, if any civil disabilities attend his Tribal Court conviction and sentence." [Doc. 36 at 7.]

### 5. Romero has failed to identify any effective relief the Court can grant

The issue of mootness in this case ultimately is determined by the question of whether the Court can grant effective relief. The Court does not have "the power to decide questions that cannot affect the rights of litigants in the case before them." Lewis, 494 U.S. at 477 (citation and quotation marks omitted). Although Romero states that granting relief "will have an impact" on him, he fails to identify the "impact." [Doc. 38 at 7.] Granting his petition will not relieve him of his current incarceration and the remaining to alleged collateral consequences are speculative and nonspecific.

Furthermore, Romero has failed to respond to the Pueblo's argument that the disabilities and burdens he claims to suffer as a result of the tribal court conviction had already been imposed due

14

to a long history of prior convictions. In his reply to the Pueblo's brief, he did not dispute that either (1) he has a prior history of criminal convictions or (2) any Carafas-type liberties had already been forfeited. Thus, even if the Court were to rule in his favor, he would not be freed from any of the consequences he alleges here. See Malloy v. Purvis, 681 F.2d 736 (11th Cir. 1982) (dismissing habeas petition as moot where petitioner's civil liberties had previously been forfeited due to other convictions). "Judicial restraint should be exercised to avoid rendition of an advisory opinion." Norvell v. Sangre de Cristo Dev. Co., 519 F.2d 370, 375 (10th Cir. 1975) (citation omitted) (distinguishing judiciable controversies from disputes that are hypothetical or academic). The Court concludes that any ruling on Romeo's claims would be merely advisory and there is no specific relief the Court can grant.

### III.   CONCLUSIONS and RECOMMENDATION

Romero is no longer serving the sentence that the Court previously concluded violated ICRA. The Court therefore withdrew its earlier recommendation and afforded Romero the opportunity to identify collateral consequences, if any, that satisfy Article III's case-or-controversy requirement and save his Petition from mootness. [Doc. 36.] He has failed to do so. The Court therefore concludes that the case is moot.

The Court recommends that the *Petition for Writ of Habeas Corpus Pursuant to 25 U.S.C. § 1303 for Relief from Indian Tribal Court Conviction and Order of Detention* [Doc. 1] be **dismissed as moot.**

                                                                                            _____
                                                                                            **DON J. SVET**
                                                                                            **United States Magistrate Judge**

15